[No. 42766. En Banc. August 22, 1974.]

LESCHI IMPROVEMENT COUNCIL et al., *Appellants*, v.
WASHINGTON STATE HIGHWAY COMMISSION et al.,
*Respondents*.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle, Robert R. Beezer, Thomas H. Grimm,* and *David G. Knibb,* for appellants.

*Slade Gorton, Attorney General, Thomas R. Garlington* and *Robert M. McIntosh, Assistants,* for respondents.

UTTER, J.—This is an appeal from a judgment dismissing an action to review a hearing relating to issues of limited access and design of a limited access highway conducted by the Washington State Highway Commission. The purpose of the hearing was to establish that segment of Interstate Highway 90 (I-90/SR90) which extends from the west shore of Mercer Island to the point where the highway will intersect with Interstate Highway 5 in Seattle, as a limited access facility.

The plaintiffs/appellants allege they are abutting property owners entitled to review of the Highway Commission's findings and order pursuant to the express provisions of RCW 47.52.195, limiting review of such findings and order to "an abutting owner." The petitioners/appellants, on the other hand, challenge the findings and order insofar as it relates to the overall design of the highway not related to limited access questions through a petition for a writ of certiorari. They concede they are not abutting property owners entitled to review under RCW 47.52.195, but allege they are directly affected by noise and air pollution from design defects of the proposed highway. They seek to review the applicability of the provisions of the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, and 47.04.110-.130 to the proceedings to establish the limited access highway.

In the area of design, RCW 47.52.131 provides that when a state plans a limited access facility through a county or an incorporated city or town, it shall give careful consider-

ation to the counties' or cities' comprehensive plans, land use patterns, present potential traffic volume of county roads and city streets crossing the proposed facility, origin and destination traffic surveys, existing utilities, the physical appearance the facility will present, and other pertinent surveys, and shall present to the city or county a report showing how these factors have been taken into account and how the proposed facility will serve public convenience and necessity.

Petitioners and plaintiffs allege two errors in the conduct of the hearing. They argue that all witnesses were not sworn as required by RCW 47.52.135 and that the Department of Highways had not prepared, nor had the Highway Commission considered, an adequate environmental impact statement.[1]

The respondents challenged the standing of both plaintiffs and petitioners to seek review, contending that none of them was an abutting owner within the meaning of RCW 47.52.195, and that the statutory provision limiting review to abutting owners is exclusive for all issues in this case.

[1]RCW 47.04.110-.130 requires the Department of Highways to prepare an environmental impact report prior to the holding of its first public hearing after August 9, 1971, relating to the location or design of a new highway or alteration of a highway which will have a significant environmental impact. The limited access hearing which is the subject of this action was conducted June 19 and 21, 1971, before this statute became applicable. It happened, however, that in accordance with federal requirements (National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*), the highway department had compiled a statement prior to the hearing and had circulated it to interested agencies and received and considered their comments.

RCW 43.21C.030(1): "The policies, regulations, and laws of the state of Washington shall be interpreted and administered in accordance with the policies set forth in this chapter, and . . ."

RCW 43.21C.030(2)(c): "Include in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the environment, a detailed statement by the responsible official on . . ."

RCW 43.21C.060: "Chapter supplementary. The policies and goals set forth in this chapter are supplementary to those set forth in existing authorizations of all branches of government of this state, including state agencies, municipal and public corporations, and counties."

The trial court held that the plaintiffs are not abutting owners who have a right to judicial review under the limited access statute but concluded that the petitioners have a right to obtain review of the proceeding by certiorari insofar as the applicability of SEPA is concerned because they are affected by noise and noxious fumes emanating from the motor vehicles which use the highway. The court also found the environmental impact statement complied with the requirements of SEPA. We affirm the trial court.

■ Petitioners complain that all witnesses at the hearing were not sworn as required by RCW 47.52.135. The general rule is that objections or questions which have not been raised or urged in the proceedings before the administrative agency or body will not be considered by the court on review of the order of such agency or body. *State ex rel. Northeast Transp. Co. v. Abel*, 10 Wn.2d 349, 116 P.2d 522 (1941). The petitioners made no objection to the procedure followed at the limited access hearing in permitting members of the public to speak without being placed under oath. A claim that an administrative agency has admitted evidence which was improperly taken cannot be reviewed by the court unless there was an objection at the time it was taken or a motion to strike it out. *Great Northern Ry. v. Department of Pub. Works*, 137 Wash. 548, 242 P. 1092 (1926).

■■ The petitioners have standing to bring this action on a basis other than the language of the limited access act. There is substantial evidence in the record to support the trial court's finding that petitioners are adversely affected by the noise and noxious fumes from the proposed highway and, as persons directly affected, they therefore have standing to raise the SEPA issues. *Loveless v. Yantis*, 82 Wn.2d 754, 513 P.2d 1023 (1973).

The applicability of SEPA to existing authorizations of all branches of government of this state does not open the door to irresponsible use of the provisions of SEPA to unjustly delay projects. Laws of 1973, 1st. Ex. Sess., ch. 179, § 2 established a procedure which sharply curtails belated

challenges to governmentally approved private projects where there is a question about the noncompliance with the provisions of SEPA. Failure to start action within 60 days of final publication of notice of a major action significantly affecting the quality of the environment, published in proper form, bars an action to set aside, enjoin, review or otherwise challenge any such action of a governmental agency with respect to any private project on grounds of noncompliance with SEPA.

Under the same circumstances, the failure to timely proceed on grounds of violation of the provisions of SEPA against government projects can be a bar to such suits by application of the doctrine of laches. *New York v. United States*, 337 F. Supp. 150, 160 (E.D.N.Y. 1972), *further proceedings*, 344 F. Supp. 929 (E.D.N.Y. 1972); *Clark v. Volpe*, 342 F. Supp. 1324 (E.D. La. 1972), *aff'd*, 461 F.2d 1266 (5th Cir. 1972). Application of the doctrine of laches is on a case-by-case basis. Where a public project has not progressed to the point where the costs of altering or abandoning such a project would certainly outweigh the benefits of the application of environmental concerns over preservation of the ecology, a court has refused to bar a suit by application of the doctrine of laches. *Arlington Coalition on Transp. v. Volpe*, 458 F.2d 1323 (4th Cir. 1972). Here the suit was brought on February 19, 1971, and the applicable statutes were in effect on January 1, 1970. The court sought to balance the public interest in the outcome of the suit against the harm caused by delay in bringing the suit.

The petitioners here have standing to raise SEPA issues in proceedings that are initiated under RCW 47.52 because the provisions of SEPA are engrafted onto the existing statutory authorizations. (RCW 43.21C.060)

In *Calvert Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Comm'n*, 449 F.2d 1109, 1112 (D.C. Cir. 1971), the court commented on the effect of similar language in the National Environmental Policy Act (NEPA).

> NEPA, first of all, makes environmental protection a part of the mandate of every federal agency and department. The Atomic Energy Commission, for example, had continually asserted, prior to NEPA, that it had no statutory authority to concern itself with the adverse environmental effects of its actions. Now, however, its hands are no longer tied. It is not only permitted, but compelled, to take environmental values into account. Perhaps the greatest importance of NEPA is to require the Atomic Energy Commission and other agencies to *consider* environmental issues just as they consider other matters within their mandates.

(Footnote omitted.) The prime sponsor of NEPA, Senator Henry M. Jackson, stated: "The bill specifically provides that its provisions are supplemental to the existing mandates and authorizations of all Federal agencies. This constitutes a statutory enlargement of the responsibilities and the concerns of all instrumentalities of the Federal Government." 115 Cong. Rec. 19,009 (daily ed. July 10, 1969).

The concern of the legislature regarding application of environmental legislation to existing laws relating to the highway department is emphasized by the fact that two separate laws stressing environmental concerns are applicable to them. RCW 47.04.010-.130 specifically applies to every case where a state highway is to be constructed in a new location or where a state highway resconstruction project will require additional right-of-way. These sections further provide that if one or more hearings have occurred prior to the effective date of the act that the department shall prepare an environmental report prior to conducting the next public hearing. RCW 47.04.120. Under this statute the areas the report is to consider are identical to those set forth in SEPA, RCW 43.21C.030(2) (c) (i)-(v).

SEPA, as well, is applicable by its specific terms where it directs that, "to the fullest extent possible: (1) The policies, regulations, and laws of the state of Washington shall be interpreted and administered in accordance with the policies set forth in this chapter . . ." RCW 43.21C.030. SEPA further directs that "The policies and goals set forth

in this chapter are supplementary to those set forth in existing authorizations of all branches of government of this state, including state agencies . . ." RCW 43.21C.060.

Respondents concede SEPA is applicable to the Highway Commission's findings and order and that adoption of the access plan must be regarded as an action significantly affecting the quality of the environment. As such, SEPA requires the commission at that stage to consider a detailed statement on

(i) the environmental impact of the proposed action;
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented;
(iii) alternatives to the proposed action;
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented;

RCW 43.21C.030 (2) (c) (i) - (v).

These considerations are focused on different concerns and are much more detailed than the provisions of RCW 47.52.131 of the limited access act.

Inasmuch as predominantly highway concerns are the subject of the limited access act, it may be a proper interpretation of legislative intent to restrict an appeal to the courts under the terms of the act, prior to SEPA, to private parties. The act limits its application to parties whose property abuts upon an existing road or street to which access is proposed to be limited. Under SEPA, however, as applied to that act, far broader questions of environmental impact, identification of unavoidable adverse environmental effects, choices between long- and short-term environmental uses and identification of the commitment of resources are presented. The determination of whether these issues are adequately presented for consideration is not within the contemplation of the provisions governing appeal from the determinations of the highway authority, RCW 47.52.137, or

of the board of review, RCW 47.52.150. It is not reasonable for the State to assert the petitioners' right of review by certiorari of SEPA issues is circumscribed by a statute passed before the enactment of SEPA and dealing with a much more narrow range of issues.

In *State ex rel. Dupont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963), we recognized the dual nature of this court's exercise of its power to grant a writ of certiorari. On the one hand is the recognized judicial approach to reviewability of administrative actions revolving around nonjudicial functions which do not involve an alleged violation of fundamental rights and which potentially involve the exercise of administrative discretion. *Okanogan County School Dist. 400 v. Andrews,* 58 Wn.2d 371, 363 P.2d 129 (1961). There we said we would adhere to the limitations of judicial review imposed by RCW 7.16.040.[2]

On the other hand, we have held in *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962), pursuant to article 4, section 6 (amendment 28) of the Washington Constitution that whether or not the administrative function of an agency could be characterized as discretionary and nonjudicial, our courts possessed constitutional and inherent power to review illegal or manifestly arbitrary and capricious action violative of fundamental rights. In *Dupont,* at page 794, we recognized in the earlier *Cosmopolis* case an accepted judicial approach to reviewability of administrative actions which, though discretionary and functionally nonjudicial, could, if

---

[2]RCW 7.16.040: "Grounds for granting writ. A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

illegally or arbitrarily and capriciously exercised, do violence to fundamental rights. As Justice Hamilton stated:

> The essential touchstone, impelling invocation of the inherent or constitutional power of judicial review of nonjudicial administrative action, is the basic nature and extent or magnitude of the right involved coupled with the patency and character of the alleged violation.

The inherent power of constitutional review under these circumstances was again restated in *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973).

An illegal act, in the context of administrative agency action, is an act which is contrary to statutory authority. *Mobil Oil Corp. v. Reynolds*, 202 Kan. 179, 446 P.2d 715 (1968). Where an administrative agency fails to have before it, as required, an adequate environmental impact statement when it enters its findings and conclusions, it acts illegally, contrary to the statutory authority of our State Environmental Policy Act of 1971, RCW 43.21C. Such agency fact-finding without benefit of an adequate impact statement violates the procedural process created by the legislature to protect each person's "fundamental and inalienable right to a healthful environment." RCW 43.21C.020(3).

Petitioners seeking a writ of certiorari in superior court who make an adequate showing that they will be adversely affected by proposed administrative agency action and who allege that an administrative agency made factual findings and entered conclusions based on an inadequate environmental impact statement, which the law requires, have standing. They have standing to seek the writ precisely because they raise the question whether a nonjudicial administrative agency "acted illegally . . . violative of fundamental rights." *State ex rel. Hood v. State Personnel Bd., supra* at 401; *State ex rel. Dupont-Fort Lewis School Dist. 7 v. Bruno, supra; State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno, supra.*

The right of petitioners affected to a "healthful environment" is expressly recognized as a "fundamental and ina-

lienable" right by the language of SEPA. The choice of this language in SEPA indicates in the strongest possible terms the basic importance of environmental concerns to the people of this state. It is a far stronger policy statement than that found in the National Environmental Policy Act which reads only that "The Congress recognizes that each person should enjoy a healthful environment . . ." 42 U.S.C. § 4331(c).

Although SEPA was not enacted until after the commission held its hearings on the limited access highway, SEPA nonetheless is applicable in this case. The commission's findings were not entered until after SEPA was enacted, and therefore the requirements of SEPA are applicable to the Highway Commission's findings and order, as respondents concede. Under SEPA an adequate environmental impact statement must be made available to the commission before it enters its findings and order. RCW 43.21C.030(2)(c).

■ The comprehensive review envisioned by SEPA is to be " 'detailed' and does not invite a lackadaisical approach." *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 494, 513 P.2d 36 (1973). We cannot agree with respondents' contention that SEPA is to be construed *less strictly* than NEPA. Our responsibility in construing an act is to construe a statute with reference to its manifest purpose. *Roza Irrigation Dist. v. State*, 80 Wn.2d 633, 497 P.2d 166 (1972). This state's act is far more emphatic than NEPA in its legislative statement of purpose of the importance to this state's citizens of a healthful environment, as we have previously discussed. We cannot, consistent with legislative intent, give SEPA a less restrictive interpretation.

We note that two trial courts have ruled differently on the adequacy of the same impact statement. The rulings differ in the King County Superior Court case here on review and the Federal District Court's opinion in a parallel and related proceeding. *See Lathan v. Volpe*, 350 F. Supp. 262 (W.D. Wash. 1972). It is possible for each to reach different conclusions based on the same facts. The

Federal District Court was construing NEPA as supplemented by a Department of Transportation Policy and Procedure Memorandum[3] and was also required to rely upon established federal guidelines.[4] SEPA, upon which the King County Superior Court relied, was not extended by such guidelines as of the date the Department of Highways entered its findings and order, and we are unable to say whether their impact statement would have been different had these, in fact, existed.

The trial court examined the statement and found "The final environmental impact statement (exhibit 2) contained a detailed statement by the Washington State Highway Commission, Department of Highways, in conformance with the provisions of RCW 43.21C.030 (2) (c)."

This finding by the trial court raises questions on review here as to (1) what standards of review are appropriate to a trial court examining the record of an administrative agency before it on a writ of certiorari, and (2) what standards this court shall use to review the findings of the trial court.

Nearly half a century ago Mr. Justice Frankfurter observed with concern the increasing body of unreviewed "law" emanating from administrative agencies: "The control of banking, insurance, public utilities, finance, industry, the professions, health and morals, in sum, the manifold response of government to the forces and needs of modern society, is building up a body of laws not written by legislatures, and of adjudications not made by courts and not subject to their revision." Frankfurter, *The Task of Administrative Law*, 75 U. Pa. L. Rev. 614 (1927).

We look to the Washington Administrative Procedure Act, RCW 34.04, for guidance in setting out standards for review of administrative agency action. As stated in RCW 34.04.130 (6) (d): "The court may affirm the decision of the agency or remand the case for further proceedings; or it

---

[3] (PPM) 90-1 (1971)
[4] 36 Fed. Reg. 7724 (1971)

may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (d) affected by other error of law . . . ."

This court has said that judicial review of findings of fact made by administrative agencies is limited to a determination of whether the administrative findings are clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order. *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969); *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 518 P.2d 1237 (1974). This distinction between "questions of law" and "questions of fact" was commented on by Mr. Justice Brandeis in *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 84, 80 L. Ed. 1033, 56 S. Ct. 720 (1936):

> The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied; and whether the proceeding in which facts were adjudicated was conducted regularly. . . . But supremacy of law does not demand that the correctness of every finding of fact to which the rule of law is to be applied shall be subject to review by a court. If it did, the power of courts to set aside findings of fact by an administrative tribunal would be broader than their power to set aside a jury's verdict. The Constitution contains no such command.

The clearly erroneous test is, of course, not applicable to the review of questions of law.

In the context of the review of administrative determinations, the practical method of distinguishing questions of law from questions of fact by classification of the cases is stated by Judge Friendly in *NLRB v. Marcus Trucking Co.*, 286 F.2d 583, 590-91 (2d Cir. 1961). The question of whether application of established legal standards to raw evidentiary material is a question of law or fact is an old one. O. Holmes, Jr., *The Common Law* 126 (1881); L. Thaga, *A Preliminary Treatise on Evidence at the Common Law* (1898). "The cases presenting the issue . . . seem to

fall into three major groupings, although, as would be expected, the lines between them are fuzzy:" *NLRB v. Marcus Trucking Co., supra* at 590.

The first major group consists of "[c]ases . . . where the chief problem is the propriety of an administrative conclusion that raw facts, undisputed or within the agency's power to find, fall under a statutory term as to whose meaning, at least in the particular case, there is little dispute;" The second is "[c]ases where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . ." The third category is that of "[c]ases where the only or principal dispute relates to the meaning of the statutory term . . ." *NLRB v. Marcus Trucking Co., supra* at 590-91. Generally, cases in the first category present questions of fact, those in the third category questions of law, and those in the second mixed questions of law and fact.

An additional approach to the question-of-fact/question-of-law issue may be characterized as the analytical approach. In *NLRB v. Marcus Trucking Co., supra* at 590, Judge Friendly quoted Professor Jaffe's definition of a finding of fact: " 'A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.' "

This view has long been a part of the common law of this state. In *Cline v. Altose*, 158 Wash. 119, 126, 290 P. 809, 70 A.L.R. 1471 (1930), tenant-respondents recovered money damages from landlord-appellants in a wrongful eviction action where there was no physical ouster of respondents. There it was found that the actions of the parties adequately established respondents' right to a damage award. This court on appeal held that the finding below was not a question of fact unreviewable on appeal. We stated the "finding in favor of the respondents . . . *necessarily* implies that there was a constructive eviction, and the question remains whether the evidence, construed in its most favorable light,

justifies the conclusion that the acts of the appellant amounted to such an eviction. This was a question of law . . . and is a question reviewable in this court. *Thompson v. R. B. Realty Co.*, 105 Wash. 376, 177 Pac. 769." (Italics ours.) This view is consistent with the definition of a finding of fact stated by Professor Jaffe.

The Federal Power Act § 10(a), 16 U.S.C. § 803(a) (1964), states that it is the commission's responsibility to determine whether "the project" will or will not:

> be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes; . . .

Our statute, RCW 43.21C.020(2)(c), states that:

> (2) In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the state of Washington *and all agencies of the state* to use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state and its citizens may:
>
> . . .
>
> (c) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(Italics ours.) Neither a determination by the FPC that a project is "best adapted" nor a determination by our Highway Commission that its project allows the State and its citizens to "[a]ttain the widest range of beneficial uses of the environment without degradation" is independent of or anterior to any assertion as to its legal effect.

 In this case the Highway Commission made no finding as to whether the environmental impact statement before it was adequate. Such a finding, if it had been made, would have been an application of law to the facts before it and as such would have been reviewable by the trial court as a question of law. This is so because a determination of

the adequacy of an environmental impact statement is not "independent of or anterior to any assertion as to its legal effect." A determination of adequacy necessarily determines the legal rights of the parties as to the disputed project.

Courts have inherent power to adjudicate the adequacy of an environmental impact statement as a question of law, reviewable on appeal. Indeed, RCW 43.21C.090 provides that "[i]n any action involving an attack on a determination by a governmental agency relative to the requirement or the absence of the requirement, or the adequacy of a 'detailed statement' [RCW 43.21C.030], the decision of the governmental agency shall be accorded substantial weight."

In *Scenic Hudson Preservation Conf. v. FPC*, 354 F.2d 608, 612 (2d Cir. 1965), the court declared that the "comprehensive plan" or "public interest" finding is ipso facto an assertion as to its legal effect. Thus, under the analytical test, the reviewing court was not bound by the basic "comprehensive plan" or "public interest" conclusion of the Federal Power Commission. Such a determination whether expressly or impliedly made was a "question of law." Similarly, under SEPA an agency's decision to approve a project impliedly, if not expressly, determines that the project is consistent with the citizen's fundamental right to a healthful environment and with the legislatively mandated policy that an agency action allow to citizens the widest practicable range of beneficial uses of the environment without degradation. RCW 43.21C.020(2)(c). These agency conclusions, either express or implied, are questions of law because they are not "independent of or anterior to any assertion as to [their] legal effect."

Some courts have remanded to the agency its decision to allow or disallow a project because of the agency's failure to adequately explain the basis of its decision for the reviewing court. In *Environmental Defense Fund, Inc. v. Ruckelshaus*, 439 F.2d 584 (D.C. Cir. 1971), the District of Columbia circuit remanded a decision not to suspend the

registration of DDT for further proceedings in which the administrator was to correct his failure to explain his decision and to articulate the criteria upon which it was based.

In *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 465 F.2d 528, 541 (D.C. Cir. 1972), the court remanded for a fuller explanation of the reasons for the refusal. The court there summed up this and its additional grounds for remand by saying, "We cannot discharge our role adequately unless we hold EPA to a high standard of articulation." This procedure has merit in the proper case because it allows the reviewing court an opportunity to obtain a more detailed and informative record upon the basis of which to rule as a matter of law whether the environmental impact statement is adequate. It is not required, however. Trial courts may conduct additional fact finding in order to rule on the adequacy of an impact statement and either procedure may be employed by the reviewing trial court in its discretion. The role of a reviewing court would seem to be one of determining " 'whether the environmental effects of the proposed action and reasonable alternatives are sufficiently disclosed, discussed and that they are substantiated by supportive opinion and data.' " Note, *The National Environmental Policy Act: What Standard of Judicial Review?*, 39 J. Air L. & Com. 643, 654 (1973).

Where the superior court has applied the "clearly erroneous" test in examining administrative agency action on a writ of certiorari, on review the appellate court stands in the same position as the superior court, and applies the same test directly to the administrative action. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 518 P.2d 1237 (1974).

Concerning conclusions of state law this court is the final arbiter, and conclusions of state law entered by an administrative agency or court below are not binding on this court. *Baker v. Yakima Valley Canal Co.*, 77 Wash. 70, 137 P. 342 (1913); *Harrison v. Consolidated Holding Co.*, 200 Wash.

434, 93 P.2d 729 (1939); *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 457 P.2d 600 (1969).

Here, we cannot say, based on the record before the trial court, that the disputed impact statement fails, as a matter of law, to meet the requirements of SEPA. We therefore affirm the trial court.

FINLEY, STAFFORD, and BRACHTENBACH, JJ., concur.

HAMILTON, J. (concurring in the result)—I concur in the result of the majority opinion. In so doing, I wish to emphasize that I see no irreconcilable conflict between the provisions of SEPA and of RCW 47.52.195, confining the right of judicial review of a limited access hearing to abutting property owners. Had the hearing of June 1971 and the findings and order following that hearing been confined to the narrow issue of limiting access, I would be willing to conclude that petitioners, who were not abutting owners, would lack standing under RCW 47.52.195 to obtain review of a decision to limit access.

The fact is, however, that the hearing of June 1971, and the findings and orders emanating therefrom were not so confined. The notice of hearing given to the public as well as to the petitioners was structured and timed to permit the hearing to "double" as an access and overall design hearing, this to meet federal requirements as well as the provisions of RCW 47.52.131 and .133. The preliminary environmental impact statement was made available to the public, and was presented and discussed at the hearing. Expert and lay testimony was presented concerning projected traffic volume, number and types of traffic lanes, overpasses and tunnels, buffer zones, bridges, air and noise pollution, relocation assistance programs, and the social and economic impact of the proposed highway. The final environmental impact statement was prepared subsequent to the hearing incorporating considerations other than access developed at the hearing.

The final findings and order of the Highway Commission considered overall design alterations and recommendations

presented at the hearing, adopting some and rejecting others. And, finally, respondents concede that SEPA is applicable to the final findings and order. The hearing as conducted, then, became but a step in the development and finalization of the overall construction and design plans for the proposed highway facility.

Thus, in my view, petitioners in the context here presented were entitled to challenge by certiorari the adequacy of the environmental impact statement as such bore upon the final findings and order of the Highway Commission.

FINLEY, J., concurs with HAMILTON, J.

ROSELLINI, J. (concurring in part; dissenting in part)—I heartily concur with the last paragraph of the majority opinion. Since the appellants in this action introduced no evidence whatsoever upon the question of the adequacy of the respondents' environmental impact statement, but relied entirely on a federal district court judge's finding in another action involving another segment of the highway,[5] we would be perverse indeed were we to say that the evidence does not support the trial court's finding.

I also agree that the protection of man's environment is a matter of great and proper public concern, and that the legislature which is the branch of government designated in the constitution to provide solutions to social and economic problems, has enacted laws upon this subject, which I will mention later. All of those have provisions for judicial review, save and except the environmental policy act.[6]

I do not, however, agree with the conclusion of the majority that the trial court was correct in deciding to take jurisdiction of this action. Judicial review of the administrative proceeding involved, at the instance of persons standing in the position of the appellants, is not authorized

---

[5]That case, *Lathan v. Volpe*, 350 F. Supp. 262 (W.D. Wash. 1972) is now before the Ninth Circuit Court of Appeals for review.

[6]Laws of 1974, 1st Ex. Sess., ch. 179, while it limits the time within which a governmental action may be challenged in court, does not

by any statute or any doctrine of common law, and there is no suggestion that it is mandated by any provision of the state or federal constitutions. Whether wisely and properly or not, this court has tended in recent years to expand its reviewing power over the discretionary acts of agencies of other branches of government, but the most liberal rule that we have yet evolved is not broad enough to tolerate this lawsuit.

If the legislature had thought it wise to allow interested citizens to challenge governmental actions on the ground that the procedures prescribed in the policy act had not been followed, it could have done so in plain ordinary language, and a person reading the act would know what his rights were. It could also have extended to the courts the kindness of defining some of its terms. It could have explained what it meant by the phrase "major action significantly affecting the environment," and it could have laid down some criteria for judicial review of the "adequacy" of an environmental impact statement. The 1974 amendment indicates a legislative intent to assign these problems to the scrutiny of the Department of Ecology rather than the courts.

The courts, however, and particularly the federal courts, which one must assume are not so overburdened with justiciable controversies that they cannot find ample time to acquaint themselves with the environmental sciences and the laws of aesthetics, have plunged without apparent anxiety into those murky waters which the legislative toe was loath to test. The majority today takes its plunge with a great exuberant splash of dictum, the spray from which has left muddied and besmirched some fine old judicial principles which I propose to mention herein.

Contrary to the statement contained in the majority opinion, in considering the right of the appellants to bring this action, the trial court did not seek to "balance the

---

purport to grant any right of judicial review. It is not suggested that either the 1973 or the 1974 amendments apply in this action.

public interest in the outcome of the suit against the harm caused by delay in bringing the suit." It simply held as a matter of law that, because the appellants were disturbed by the noise and noxious fumes from the existing highway, they could challenge the administrative procedure involved in this case. That holding is not supported by any statute or case law of this state, and I would affirm the judgment of dismissal upon this ground, never touching that sticky cactus, the "adequacy" question.

The majority acknowledges the rule to be that objections or questions which have not been raised or urged in the proceedings before the administrative body or agency will not be considered by the court on review of the order of such agency or body. *State ex rel. Northeast Transp. Co. v. Abel*, 10 Wn.2d 349, 116 P.2d 522 (1941) is cited. 73 C.J.S. *Public Administrative Bodies & Procedure* § 177 (1951) states it to be the general rule.

The appellants did not object to the failure to administer oaths to those members of the public who spoke at the hearing, expressing their opinions and objections. Most if not all of these were addressed to the necessity or desirability of the highway facility, its location, and its proposed design. This omission was deliberate on the part of the Highway Commission, it admits, its purpose being to avoid the intimidating effect that the administration of an oath might have had upon persons wishing to speak. This procedure evidently met with the approval of the appellants and all others present, since none of them voiced any objection to it.

Furthermore, neither the appellants nor any other person ventured the opinion that the hearing was premature or unauthorized because an environmental impact statement which the department had previously prepared in an attempt to conform with the requirements of federal law, was inadequate. Nor was any objection of any kind made to the adequacy of the statement, either during the hearing or before the findings and order were entered. Therefore, under the rule above cited and followed by the majority

with respect to objections to the failure to administer oaths, the question whether the Commission had before it an adequate environmental impact statement was never properly raised or brought before the Commission and cannot be considered on review.

Since the appeal is rested upon allegations of error with respect to these two questions, there is nothing before us for consideration if we apply the principles of judicial review in a consistent manner. Consequently, upon this ground alone the judgment of the Superior Court should be affirmed.

Furthermore, even if the appellants had brought these questions to the attention of the Commission and thus given it a chance to correct the defects, the plaintiffs would still lack standing to question the propriety of the statutory proceeding which the trial court was asked to review in this action. In my opinion, the holding of that court that the writ of certiorari was available to the plaintiff was in error.

Nowhere in our cases, in the federal cases, in the constitution of this state or the United States, or in any statute can I find authority for the courts of this state to entertain an action to review a limited access hearing at the instance of persons in the plaintiffs' situation.

The majority correctly acknowledges that the appellants are not abutting owners, as that term is used in RCW 47.52.133, and therefore are not entitled to obtain a statutory review of the findings and order of the Highway Commission pertaining to the establishment of the highway as a limited access facility. *See Deaconess Hosp. v. State Highway Comm'n,* 66 Wn.2d 378, 403 P.2d 54 (1965), and cases cited therein.

The limited access hearing which was held here concerned an existing highway, already established and designed. A "limited access plan" is just what its name declares—a plan for limitation of access to a street or highway. The persons affected by the limiting of access are

entitled to notice of presentation of the plan. These persons are those whose property abuts upon the street or highway and who will lose currently existing access from their property to the adjoining highway.

The order of hearing dated May 13, 1971, gave notice of a limited access hearing (not a "design" hearing, as the majority would suggest). The order of the highway department entered subsequent to the hearing showed that it pertained to a "section of State Route 90 over an existing state highway in King County . . . designated as a limited access highway of the fully controlled type."

RCW 47.52.074 provides that unless an appeal is taken as provided therein, the order shall become final as to all abutting owners in 30 days. If the order is made final as to abutting owners, who are expressly given a right of appeal, how can nonabutting owners, who have no rights to appeal, claim that it is not final as to them. Where an administrative determination is made final by statute, the courts have no power to review it, except for arbitrary and capricious action. *Wyatt v. University of Washington*, 84 Wn.2d 1, 523 P.2d 910 (1974).

The appellants have not questioned the constitutional power of the legislature to enact this statute and to exclude them from the classes which are given the right to question the propriety of the proceedings taken pursuant thereto.

The majority nevertheless holds that the appellants may enter the court by another door,[7] that of "certiorari." The common-law writ of certiorari is termed a writ of review in RCW 7.16.040, which makes the writ available only where the inferior tribunal is exercising judicial functions, in accord with the common-law rule, *Sweeney v. County Comm'rs*, 43 Wash. 138, 86 P. 200 (1906). Both tacitly concede that, as to the appellants, the function of the Highway Commission was neither judicial nor quasi-judicial. Never-

---

[7]This court has held that a party who is denied the right to appeal in a statutory proceeding may not use certiorari as a device to thwart the legislative purpose. *State ex rel. Bates v. Board of Indus. Ins. Appeals*, 51 Wn.2d 125, 316 P.2d 467 (1957).

theless, the majority finds that the appellants can maintain this action. It is not clear whether the right accorded them arises out of statute or the common law. I think it finds support in neither.

The appellants' only claim of damage is that their property rights or interests are "affected" by the noise and noxious fumes emanating from the highway as it presently exists and as it will exist if the proposed improvements are ever accomplished.[8] This is not an inverse condemnation action, and no damages were alleged or proved.

It requires considerable agility to leap from the acceptance of the appellants' assertion that they are affected by the noises and fumes of automobiles on the highway, to a conclusion that they can maintain an action of this kind. It must be kept in mind that the plaintiffs seek review of an administrative hearing—a hearing to which they were not parties, although they, as members of the public, were invited to attend and to express their views if they chose. They would have no right to enjoin the construction of the highway, even if the noise levels and noxious fumes were so great as to constitute a common-law nuisance. *Deaconess Hosp. v. State Highway Comm'n, supra.* If they cannot maintain an injunction action based upon their alleged damage, which is of a kind which is shared alike by all city dwellers and contributed by all automobile users (a class from which the appellants have not avowedly disassociated themselves), how much less should they be heard to question the regularity of a proceeding affecting only one aspect of that highway, a proceeding to which they were not parties and in which no constitutional, statutory or common-law right of theirs was affected.

The general rule is that no one has a vested right to be protected against consequential injuries arising from a

---

[8]The Commission's evidence tended to show that the plan to limit access to I-90/SR 90 is expected to reduce traffic congestion, by reducing the number of access points and increasing the number of lanes of travel, and consequently to reduce the amount of traffic noise and air pollution. The appellants did not offer evidence to the contrary.

proper exercise of rights by others. This rule is especially applicable to injuries resulting from the exercise of public powers. *Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 495 P.2d 657, 50 A.L.R.2d 1076 (1972).

The legislature has expressly authorized the establishment of this highway (RCW 47.17.140), and it is not suggested that it lacked the constitutional power to do so. It has also authorized the limiting of access. It was a plan drawn pursuant to this authority which the Commission had under consideration at the hearing attended by the appellants. They do not object to the limited access plan. In fact, they do not complain that the findings were unsupported by evidence or that the order deprived them of any right. They complain only that the procedure was irregular. In a word, they object to the form and not to the substance. To my mind, this fact alone shows that the purpose of this action is not to complain of the denial of any substantial right, but to delay and obstruct the construction of a state facility of which the appellants disapprove. The courts should not allow their processes to be used for such purposes.

Since the legislature has power to formulate the conditions under which resort to the courts may be had, the persons accorded a right to obtain review of administrative decisions and orders are to be ascertained from the terms of the statute providing therefor. 73 C.J.S. *Public Administrative Bodies & Procedure* § 176 (1951). As stated in 2 Am. Jur. 2d *Administrative Law* § 556 (1962), constitutional questions aside, it is for the legislature to determine how the rights which it creates shall be enforced. An exception to this rule is the rare case where the legislature has clearly expressed the intent to create a right; the defendant is interfering with the exercise of that right, and there is no statutory remedy. *See Krystad v. Lau,* 65 Wn.2d 827, 400 P.2d 72 (1965), for example. In *Operating Eng'rs Local 286 v. Sand Point Country Club,* 83 Wn.2d 498, 519 P.2d 985 (1974), we restricted the application of that rule to cases where no affirmative duty is placed upon the defendant.

The only right which is given to the appellants under RCW 47.52 is the right to appear and be heard. It is not claimed that this right was denied them.

The majority can point to no provision of RCW 47.04.110-.130 or RCW 43.21C which purports to confer upon private citizens a right to obtain judicial review of administrative proceedings.

RCW 47.04.110-.130 declares it to be the public policy of the state that, in the location, design and construction of state highways, every effort should be made to minimize and eliminate effects which are adverse to the environment. It requires the consideration of such factors as dislocation of people, residences, and businesses and air and water pollution. An environmental impact statement is to be prepared by the Department of Highways prior to holding the first public hearing relating to location or design[9] of the highway after August 9, 1971. This statement is to be reviewed by the Department of Ecology, and copies of its review statement are to be transmitted to the Department of Highways, any interested citizens, and representatives of the news media prior to the hearing.

---

[9] My examination of the statutes pertaining to highways reveals that there is only one which expressly requires location and design hearings. That is RCW 47.16.220 (Laws of 1969, 1st Ex. Sess., ch. 281, § 57), which authorizes and directs the Joint Committee on Highways, with the cooperation and assistance of the State Highway Commission, to conduct such hearings with respect to the proposed establishment of a new highway running from Auburn to Bothell, and to report its findings to the legislature prior to the 1971 session. However, RCW 47.04.070 requires the Highway Commission, in matters relating to the cooperative construction or improvement of any state highway, to adapt its procedures to the requirements of applicable federal statutes and regulations. 23 U.S.C. § 128 requires hearings by state highway departments in connection with federal aid highways. This section is implemented by a regulation known as Policy and Procedure Memorandum 20-8 (23 C.F.R. App. A) which requires separate corridor or location hearings and design hearings for every federal aid highway including interstate highways such as I-90. We are advised that the corridor and design hearings for this project were held in 1963 and 1970, respectively, before the enactment of RCW 47.04.110-.130 and RCW 43.21C.

RCW 43.21C.010 states:

The purposes of this chapter are: (1) To declare a state policy which will encourage productive and enjoyable harmony between man and his environment; (2) to promote efforts which will prevent or eliminate damage to the environment and biosphere; (3) and stimulate the health and welfare of man; and (4) to enrich the understanding of the ecological systems and natural resources important to the state and nation.

In RCW 43.21C.020 the legislature recognizes man's dependency upon his environment and also recognizes that man's activities have an effect upon his environment. It declares that it is the continuing policy of the state, in cooperation with federal and local governments, and other concerned public and private organizations, to use all practical means and measures, including financial and technical assistance in a manner calculated to:

(a) Foster and promote the general welfare; (b) to create and maintain conditions under which man and nature can exist in productive harmony; and (c) fulfill the social, economic, and other requirements of present and future generations of Washington citizens.

Paragraph (2) provides:

In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the state of Washington and all agencies of the state to use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state and its citizens may;

(a) Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

(b) Assure for all people of Washington safe, healthful, productive, and esthetically and culturally pleasing surroundings;

(c) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(d) Preserve important historic, cultural, and natural aspects of our national heritage;

(e) Maintain, wherever possible, an environment

which supports diversity and variety of individual choice;

(f) Achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(g) Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

The third paragraph states:

The legislature recognizes that each person has a fundamental and inalienable right to a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment.

In RCW 43.21C.030 guidelines are set up which all branches of state government[10] are authorized and directed to follow, to the fullest extent possible. These include the factors which are to be considered in drawing an environmental impact statement, which is to be included in every recommendation or report on proposals for legislation and

---

[10]This section would appear to apply to this court, since we are a branch of the state government, and decisions which we render which permit or forbid the taking of major actions by other branches or agencies will in themselves have a major impact on the environment. It would appear, therefore, that under the terms of the act, this court should prepare an environmental impact statement to accompany the decision into the Washington Reports. According to the evidence shown in the environmental impact statement of the Highway Commission, delay in the construction of SR 90 has indeed had a significant impact on the environment and will continue to do so, inasmuch as the project is designed to reduce air pollution resulting from traffic congestion, and water pollution resulting from oil spills on the present bridge, as well as to provide landscaped buffer zones and park areas and, most importantly, to reduce the danger to life and limb, as well as the wear and tear on the nerves of drivers forced to use the present inadequate bridge and highway, the design of the present Lake Washington bridge and the use of reversible lanes both being notoriously hazardous.

Obviously this court is not willing to utilize the authority or abide by the direction of the legislature in this regard. If it finds the task of reviewing the Superior Court's evaluation of the Highway Commission's environmental impact statement too onerous to undertake, it can hardly be expected to compile an impact statement of its own. However, I find it difficult to reconcile the liberal approach which this court has taken in interpreting this statute with a conclusion that the court itself is not obliged to comply with it.

other major actions significantly affecting the quality of the environment.

In RCW 43.21C.040, all branches of state government are directed to examine their own statutory authority, regulations, policies and procedures to determine whether there are any deficiencies or inconsistencies therein which prohibit full compliance with the purposes and provisions of the act and to propose to the Governor such measures as might be necessary to bring their authority and policies in conformance with the act.

The next paragraph, RCW 43.21C.050, provides that specific statutory obligations shall not be affected by the act, and 43.21C.060 declares that the policies and goals set forth in that chapter are supplementary to those set forth in existing authorizations of all branches of government of the state. Supplementary means "in addition to," not "repealing of." *See Webster's Third New International Dictionary* 2297 (1968).

The sections of the federal act (42 U.S.C. §§ 4333, 4334, 4335) from which these last three provisions were copied have been interpreted by the United States Supreme Court in *United States v. SCRAP*, 412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973), and that court has held that it was not the intent of the Congress, in enacting the National Environmental Policy Act of 1969, to repeal by implication any other act. The court held in that case that, while the plaintiffs who alleged that they were damaged in fact had standing under section 10 of the Federal Administrative Procedure Act, 5 U.S.C. § 702, the court had no power to enjoin the ratemaking activity of which the plaintiffs complained, because the power had been denied the courts in another act, section 15(7) of the Interstate Commerce Act, 49 U.S.C. § 15(7). Applying the same interpretation to our act, as the majority indicates this court should do, it was not the intention of the legislature, in enacting the State Environmental Policy Act of 1971, to repeal that provision of RCW 47.52.137 which declares that the determination of the highway authority in a limited access hearing shall

become final 30 days after copies are mailed as provided therein, unless a review is taken, *as provided therein.* Since only abutting owners may seek review under that act, *United States v. SCRAP, supra,* compels the conclusion that this action should not be entertained.

Insofar as I have been able to ascertain, the United States Supreme Court has not to date issued an opinion as to what constitutes an "adequate" environmental impact statement or held that any agency action should be enjoined because such a statement had not been prepared.

Examining these two acts, I can find expressed in them no intent to provide for judicial review of governmental actions taken pursuant thereto.

The acts set forth certain policies and goals and provide for certain procedures to implement them. The motive for the legislation—recognition of the right of every person to a healthful environment and the duty of every person to contribute to it—is recited. As we recently reaffirmed in *Operating Eng'rs Local 286 v. Sand Point Country Club,* 83 Wn.2d 498, 519 P.2d 985 (1974), policy statements, including statements regarding legislative motives, do not constitute substantive law and create no rights.

If there were in either statute a declaration that an action taken without compliance with its procedures should be void, perhaps the court could find an implicit provision for judicial review, but the acts contain no such language.

There is in these acts no express authorization of judicial proceedings. Other contemporaneous acts pertaining to environmental controls do contain such provisions. *See* Shoreline Management Act of 1971, RCW 90.58, particularly 90.58.120 and .180; Department of Ecology Act, RCW 43.21A, particularly 43.21A.070 (making the Administrative Procedure Act, RCW 34.04, applicable to review of decisions by the director); and the Pollution Control Hearings Board act, RCW 43.21B, particularly 43.21B.180 (also involving RCW 34.04).

Applying our established rule of statutory construction, that the intent of the legislature must be derived from the

language of an act (*Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n,* 83 Wn.2d 446, 518 P.3d 1237 (1974); *Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965)), the conclusion must be that the legislature did not intend to provide for judicial intervention in the procedures provided in either of these acts. It is evident that the legislature relied upon the good faith of the officials and employees of the various governmental branches and agencies and the stimulating effect of their interaction to effect its purposes, and in the event that this reliance might prove unjustified, upon the adequacy of existing remedies available to parties whose judicially cognizable rights might be affected.

The majority is apparently convinced that the legislature should have provided that any interested citizen or group of citizens could obtain judicial review of administrative actions taken pursuant to or in disregard of these provisions. If the legislature thought that such review should be provided for, it inadvertently omitted any language expressing that intent. Since we are not a legislative body, it is our settled rule that we cannot and will not read into a statute anything which we may conceive that the legislature has unintentionally left out. *Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970); *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 269 P.2d 962 (1954); *Maryland Cas. Co. v. Tacoma,* 199 Wash. 384, 92 P.2d 203 (1939); *Seattle Ass'n of Credit Men v. General Motors Acceptance Corp.,* 188 Wash. 635, 63 P.2d 359 (1936).

This court has in fact given force to the provisions of RCW 43.21C requiring the consideration of an environmental impact statement in the decisionmaking process. In each of our prior cases, some party had standing to bring the action under a statute or common-law principle. In *Stempel v. Department of Water Resources,* 82 Wn.2d 109, 508 P.2d 166 (1973), the issuance of a water use permit was reviewed in an action properly brought under RCW 34.04 and the applicability of the State Environmental Policy Act

of 1971 was considered. (There is no contention in this case that RCW 34.04 gives the appellants a right of review.) In *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 513 P.2d 36 (1973), an injunction action was entertained where the Attorney General and the Department of Ecology were parties whose standing was not challenged. We noted that had all of the plaintiffs been private parties, a question of standing would have been presented. As I read all of the acts which I have cited and which are designed to facilitate the protection of the environment, it was the legislative intent to make the Department of Ecology the chief representative of the public interest in the protection of the environment, and to place upon it the primary responsibility for judging the adequacy of environmental impact statements. If the department failed to do its duty in that regard, conceivably a mandamus action might lie, but that is not this case. *See State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 273 P.2d 464 (1954); *State ex rel. Stephens v. Odell*, 61 Wn.2d 476, 378 P.2d 932 (1963).

Another recent case in which we found it appropriate to apply the provisions of RCW 43.21C to acts of a governmental agency was *Loveless v. Yantis*, 82 Wn.2d 754, 513 P.2d 1023 (1973). It was there held that Katherine Partlow Draham and the Cooper's Point Water Association had an interest in that action as intervenors, under CR 24(a) (because they were threatened with diminution in the value of their property) which entitled them to argue that a zoning decision should be sustained.

Since zoning ordinances determine the uses to which privately-owned land may be put, and unless they are conceived and administered with fairness to all they may result in the damaging of one man's property while giving unfair advantage to another, this court, in common with most other appellate courts, has been vigilant to see that judicial remedies are available where they are not provided in the ordinance itself.

Among cases applying this principle are *Pierce v. King*

*County,* 62 Wn.2d 324, 382 P.2d 628 (1963), and *Anderson v. Island County,* 81 Wn.2d 312, 501 P.2d 594 (1972), in both of which an extraordinary use of the writ of certiorari was allowed.

In *NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963), cited in *Loveless v. Yantis, supra,* it was held that an organization may represent its members in an action brought for the protection of their *constitutional rights,* where those rights cannot be effectively asserted in individual actions. The constitutional rights which were denied the members of the National Association for the Advancement of Colored People in that case were civil rights. The holding of that case appears to me to be eminently sound, since the courts are always—or should always be—diligent in providing a remedy where constitutional rights are denied. Arguably such rights were involved in *Loveless v. Yantis, supra,* since zoning laws, if not properly administered, may result in a deprivation of property without due process of law. No constitutional right of any kind is claimed to have been violated in this case.

*Sierra Club v. Morton,* 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972), also cited in *Loveless v. Yantis, supra,* was an action brought by an organization whose members alleged that a proposed ski resort development and a road leading to it would damage the environment. The United States Supreme Court held that they did not have standing to bring the action under the Federal Administrative Procedure Act, section 10 (5 U.S.C. § 702), because they did not allege that they themselves were users of the area in question and would be injured in fact by the development.

In a subsequent case, *United States v. SCRAP, supra,* the United States Supreme Court held that the citizens' group which brought that action under the Federal Administrative Procedure Act had shown that its members would be injured in fact by a proposed ratemaking decision.

The language of the Federal Administrative Procedure

Act is broad in its authorization of actions. It provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702.

Injunctions are also authorized by the act, which has been liberally construed, the federal courts appearing sometimes to presume that federal agencies are arbitrary and capricious. I am not aware that this court has previously entertained such a view of state administrative agencies. On the contrary, our approach has been that their proceedings are entitled to a presumption of regularity. *Farrell v. Seattle,* 75 Wn.2d 540, 452 P.2d 965 (1969); *Malaga School Dist. 115 v. Kinkade,* 47 Wn.2d 516, 288 P.2d 467 (1955). In any event, our Administrative Procedure Act is not open to the interpretation which the federal courts have placed upon the Federal Administrative Procedure Act.

Our own Administrative Procedure Act, RCW 34.04, gives no right of action to persons *adversely affected,* but only to persons "aggrieved";[11] it does not authorize injunctions; it confines the reviewing power to contested cases; and it limits the time in which review can be sought. But assuming the two acts are open to the same construction, this case was not brought under the Administrative Procedure Act. Consequently, *Sierra Club v. Morton, supra,* is not authority for the proposition that the appellants in this action had standing to sue.

The *Yantis* case itself is not authority for the proposition that persons who merely alleged that they or their property will be affected by the consequential results of an agency decision and do not show that there has been a violation of any right of theirs which is protected by the constitution,

---

[11]A person aggrieved is one whose legal right is invaded by an act complained of, or whose pecuniary interest is directly affected by a decree or judgment. Black's Law Dictionary 87 (4th ed. rev. 1968). *See also Webster's Third New International Dictionary* 41 (1968).

by statute or by the common law, can obtain judicial review of the decision or the hearing which preceded it.

If, as the majority holds, the appellants have standing to bring this action, then any citizen may obtain judicial review of any administrative proceeding involving a decision which affects him, however indirectly. Any person living within hearing and smelling distance of any street or highway has an interest in the decision whether to construct that highway, how to design it, and whether to limit access to it, equal to that of the plaintiffs in this action. Persons living near parks, schools, public auditoriums and sports arenas may, as the appellants do here, consider themselves adversely affected by noise and fumes emanating from automobile traffic, and other activities associated with such places. If the appellants have a right to obtain judicial intervention in the decisionmaking process, all others have a similar right.

The problem, of course, is that all of these places and facilities are beneficial to those who use them; and, presumably, if they are authorized by law, they are beneficial to the majority of the persons affected by them. It is not this court's function to weigh the benefits and burdens which may result from the construction or maintenance of such a facility or to determine whether it is necessary for the public health, safety or general welfare. It must be assumed that the majority is willing to bear the discomfort and annoyance that accompany those activities which they, through their duly chosen representatives, have authorized; and the courts should not allow their processes to be used to hamper or obstruct them, unless it is shown that some judicially cognizable right has been invaded.

The majority of this court says that the appellants have such a right, because RCW 43.21A recognizes that every person has a right to a healthful environment.

. Before examining the theory that RCW 43.21C gives the plaintiffs a right to bring this action, I think that the majority's uncritical acceptance of the notion that that act applies at all should be examined. The decision that RCW

43.21C was applicable to the function of the Commission in entering its findings and order is grounded on nothing more than the Commission's concession, in its brief, that the statute applied to its action. Turning to that brief, I find one paragraph on the subject. It reads as follows:

SEPA, on the other hand, was clearly applicable to the Highway Commission's Findings and Order. The Commission's action occurred after the effective date of SEPA, and *Roanoke Associates* [*Eastlake Community Council v. Roanoke Associates, Inc.,* 82 Wn.2d 475, 513 P.2d 36 (1973)] indicates that the adoption of the limited access plan must be regarded as an action "significantly affecting the quality of the environment." However, the facts of this case and the relevant legal principles, as discussed below, indicate that the Highway Commission has fully complied with the requirements of that act.

This is a very liberal concession made by the Commission, or rather, it would appear, by the Attorney General. It is, of course, a construction not of the act itself but of a holding of this court. I do not understand the *Roanoke* case to hold that every governmental action is subject to the requirements of RCW 43.21C.

In my opinion, the limited access proceeding contemplated under the statute could hardly be considered a major action which significantly affects the quality of the environment. The decision to construct and the adoption of a location and design are actions of that type, for they deal with the location of the highway, the acquisition of property and, often, the removal and destruction of homes, businesses and recreational and scenic places. It is not contended that decisions on these matters were made as a result of the limited access hearing.

I do not think that this court should resolve serious questions of statutory interpretation by accepting the concessions of a party or his attorney, whether the party be a state agency or a private individual.

In any event, the findings and order have not been challenged in this action, so the question whether RCW 43.21C

applied to them is totally irrelevant. Nevertheless, since the majority (including the signers of the concurring opinion) have chosen to make it an issue, I will present my views on that subject.

In approaching the interpretation of an ambiguous statute, we have said that, although the construction placed upon it by the Attorney General is entitled to considerable weight, his opinion is not controlling and the court remains the final authority on the proper construction. *Davis v. King County,* 77 Wn.2d 930, 468 P.2d 679 (1970). Administrative construction is entitled to great weight, but likewise is not binding. *Pringle v. State,* 77 Wn.2d 569, 464 P.2d 425 (1970).

Unlike the evaluation of environmental impact statements, statutory construction is a matter within the peculiar expertise of courts, presumably, and when such a question comes before the court, we should give it our serious and critical attention. There are rules of construction available to guide the court, rules which we often utilize. One of these is that statutes in pari materia should be read together. As we said in *Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968), where two statutes relate to the same subject matter, the court will, in its attempt to ascertain the legislative purpose, read the sections as constituting one law to the end that a harmonious total scheme which maintains the integrity of both is derived. It should be obvious that RCW 43.21C and 47.04.110-.130 both relate to agency consideration of environmental factors. They are in pari materia.

It is also apparent that RCW 43.21C is a general statute, applying to governmental branches and agencies generally, while RCW 47.04.110-.130 is a special statute, applying to the Highway Commission specifically. Another rule of statutory construction is that the specific controls the general. As stated in *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960), where a general statute and a subsequent special statute relate to the same subjects, the provisions of the special statute must prevail. Here the general statute, RCW

43.21C, was enacted in 1971. RCW 47.04.110-.130 was enacted in 1971. It applies specifically to the Highway Commission and must prevail if there is any conflict between the two.

I think if the two acts are read together, they are in harmony and the legislative intent is apparent. RCW 43.21C authorizes and directs that an environmental impact statement be prepared before every governmental action which significantly affects the quality of the environment. This act is certainly broad enough to cover actions of the Department of Highways so the legislature must have had some purpose in enacting RCW 47.04-.110-.130. What could that purpose have been? The only significant difference between the provisions of these sections and their corresponding provisions of the State Environmental Policy Act of 1971 is that they *specify* the actions of the Commission which are to be preceded by the preparation of environmental impact statements. Such statements must be prepared before any *hearing* relating to *location* or *design,* occurring after August 9, 1971. There is no requirement that the preparation of such a statement precede the entering of findings and order after a hearing which took place before the effective date of the act.

Expressio unius est exclusio alterius. There is no room left for judicial interpretation of the words "major governmental action" as applied to the Highway Commission, unless the terms "location and design" are ambiguous. The legislature has used those terms in RCW 47.16.220. It has referred to federal statutes and rules which expressly require such hearings. RCW 47.04.070. *See* note 9, *supra.* The limited access statute, RCW 47.52, does not describe the hearing provided for therein as either a location hearing or a design hearing and it would seem that the purpose of such a hearing is not to decide upon either of these matters but rather to give to persons whose access will be affected a chance to object. In other words, the legislation was inspired by a concern for property rights. *State ex rel. Ster-*

*noff v. Superior Court,* 52 Wn.2d 282, 325 P.2d 300 (1958).

It appears that the persons who were allowed to speak at the hearing turned the occasion into a de facto "location and design hearing," but the remarks made by witnesses could not affect the statutory duties of the respondents. The hearing was what the respondents announced it was—a limited access hearing.

But assuming it was a "design hearing" within the meaning of the statute, it is still that act which governs the Highway Commission's duties with regard to environmental impact statements and there is imposed upon it no duty to prepare such a statement before the hearing which the court is reviewing in this action, or before the findings and order were entered.

Had the legislature seen fit, it could have required the Highway Commission to prepare and consider a statement before reaching a decision on any matter relating to location or design, in language suited to that purpose. The fact that it omitted to do so seems harmless enough, under the circumstances of this case. The Commission was required by federal law to prepare and have before it an environmental impact statement, and the adequacy of that statement is now before the federal courts for review upon a petition for rehearing. That should be judicial review enough.

I would conclude that an environmental impact statement was not required of the respondents under state law; but assuming I am wrong on that and that there is somewhere in the law a rationale to justify the majority's assumption that such a statement was required, I nevertheless do not believe it was the legislature's intent, when it "recognized" the right of every person to a healthful environment, to confer upon persons in the position of the appellants a right to obtain review of limited access hearings.

The majority, acknowledging that the function of the Commission was not of a judicial nature, and therefore not

one which would ordinarily be reviewable, finds that the appellants are nevertheless entitled to the writ of certiorari under our holdings in *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973); *State ex rel. Du-Pont-Fort Lewis School Dist. 7 v. Bruno*, 62 Wn.2d 790, 384 P.2d 608 (1963); and *State ex rel. Cosmopolis School Dist. 99 v. Bruno*, 59 Wn.2d 366, 367 P.2d 995 (1962).

In the first cited case, we refused to review a determination of the defendant board, applying the rule which this court enunciated in the second cited case, to rationalize its departure in the cited *Cosmopolis* case, from the established principle that it will review only actions of a judicial or quasi-judicial nature. The rule evolved and most recently stated in the *Hood* case is that we will depart from that principle only when an administrative action, though nonjudicial in nature, violates some fundamental right of the petitioner.

Since it is often difficult to make distinctions between quasi-judicial and legislative or discretionary actions, it may be that we have unconsciously hit upon a criterion for determining the nature of an administrative action where that question is in doubt. If it violates a fundamental right, it must have at least some aspects of a judicial function—that is, a right-determining function.

The right of the plaintiffs in *State ex rel. Cosmopolis School Dist. 99 v. Bruno, supra,* in which I dissented, was said to be in the nature of a property right, as I understand the opinion. I think it is questionable whether there was such a right involved, particularly in view of the ultimate decision which we rendered in the case, after a remand and a second appeal. An examination of *State ex rel. Cosmopolis School Dist. 99 v. Bruno*, 61 Wn.2d 461, 378 P.2d 691 (1963), will show that the plaintiffs' case was devoid of merit.

In *State ex rel. Hood v. State Personnel Bd., supra,* there is dictum to the effect that a fundamental right may be a right created by statute. It would seem to me, upon further thought, that a fundamental right must be one recognized

in the fundamental law. The United States Supreme Court has adopted this view. But assuming for the moment that a right created by statute can be deemed fundamental, it does not follow that RCW 43.21C creates a right which entitles the appellants to bring an action of this kind. The statute implements the right which it recognizes, but it does not include in that implementation a right to judicial review of agency actions.

The majority takes the right "recognized" in RCW 43.21C and gives it an extra-statutory remedy presumably reserved for rights that are indeed fundamental. It appears to the majority to be only a short, logical jump from the recognition of a right to a healthful environment to the conclusion that the limited access hearing held by the Highway Commission violated that right. It seems to me that the worst that can be said of this hearing and the decision which followed is that they may possibly but will not necessarily have an adverse effect on the environment. For aught that the appellants show, the construction of the proposed highway will have no adverse effect at all upon the environment, and the respondents' uncontroverted evidence is that it will be beneficial. But be that as it may, I do not believe the right to a healthful environment is the kind of right this court had in mind or should have had in mind when it relaxed its rule that we review only proceedings of a judicial nature. If the rule foreclosing judicial review of nonjudicial decisions is to be relaxed at all, it should be relaxed only where the plaintiff shows a violation of some right which enjoys constitutional protection.

The United States Supreme Court has said that a fundamental right, as that court has used the term in giving special protection to such rights, is a right which is found, either express or implied, in the constitution. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973), affirming that this was the court's position in *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). The court pointed out that it is not its function to create fundamental rights.

Neither is it the function of the state legislature, nor did the legislature purport to create a right in this case. The "fundamental right" which the legislature recognized in RCW 43.21C may be a "natural right," protected by Divine law. But the courts can enforce it only to the extent that it is protected by a constitution, statute, or doctrine of common law. It is *fundamental* only insofar as the basic law provides protection for it. I can find in neither constitution any mention of such a right.

Considering the abundance of nature which was spread out before our forebears when the constitutions were drafted, it is most unlikely that any of them felt that he need fear for the health of his environment. Nor has a belated recognition of the importance of this element of life found its way into any constitutional amendment.

I must conclude that, if there is indeed a right to a healthful environment, it is not one protected by the state or federal constitution. But the courts have declared that the legislature has an inherent power to enact necessary laws to protect the public health. *Kaul v. Chehalis,* 45 Wn.2d 616, 277 P.2d 352 (1954); *State v. Boren,* 36 Wn.2d 522, 219 P.2d 566, 20 A.L.R.2d 798 (1950). The people no doubt have a right to expect the legislature to pass needed laws for the protection of the environment; and I would interpret the language of the State Environmental Policy Act of 1971 as a recognition of this reasonable expectation of the people. However, it is not the function of this court to order the legislature to pass laws, any more than it is its function to supply legislative omissions.

The right to a healthful environment is a legislatively cognizable right. It is judicially cognizable only to the extent that the legislature has seen fit to enact laws for the protection of that environment and to provide a judicial remedy for their enforcement and to the extent that the common law recognizes such rights, as in the law of nuisance.

Both federal and state legislatures have enacted many

measures to protect the public health. The environmental acts are among them. But to find the means adopted for that protection and the remedies authorized or prescribed, we must look to the provisions of the statutes. I have searched there in vain for any right given to neighboring property owners other than abutting owners, or to organizations which they may form, to object to the conduct of limited access hearings, or to appeal from or obtain in any manner judicial review of such proceedings.

Assuming then that this court has taken the position that a petitioner can obtain review of a nonjudicial administrative hearing to which he was not a party, if he shows that one of his fundamental rights was violated, the appellants have not established a violation of such a right.

Indeed, if the appellants could claim such a fundamental right, they could attack the constitutionality of the limited access statute, upon the ground that it denies them that right. This they have not done, quite understandably.

There appears to be underlying the majority's decision some vague feeling that the public interest requires it to entertain this action. I can perceive no justification for such an assumption. The public interest has not been overlooked in the limited access statute. Local governing bodies are given extensive and detailed rights in the planning and decisionmaking process. Presumably they, as well as the legislature and the Highway Commission, are concerned for the welfare of the public. If they aren't, that is a matter to be corrected through other processes. The appellants do not represent a definable class, and are unable to meet the requirements of a class action under CR 23. Much less can they claim that they are authorized to or can adequately or properly represent the interests of the public. The majority does not suggest that they do. Since they represent only their own personal points of view and their own claimed interests, I am at a loss to understand why the majority of this court feels that it should abandon all relevant principles of statutory construction and judicial restraint in order to give these parties standing.

If the court is to expand the law of standing, it should do it in a case having some merit and not one which it recognizes to be as frivolous as this one. Why disturb so many precedents when the justice of the case does not require it?

Not only have the appellants failed to show any defect in the proceedings, they have not raised any objection to the decision of the Highway Commission with respect to limiting access on the highway. We should not lose sight of the fact that this was the issue before the Commission at the hearing, and it was a decision to which essentially no remarks of the citizens who spoke at the hearing were directed. This attitude of indifference to the issue before the Commission persists in the briefs and in the opinion of the majority of this court. The question whether access should have been limited, or where or how it should have been limited, is not discussed.

It is my opinion that this court is neither authorized by statute nor equipped by education, experience or native endowment to review the "adequacy" of a document so dependent upon expertise as an environmental impact statement.[12] We can look to see if serious consideration is given to all the matters set forth in the statute, but the decision whether the consideration given is "adequate" belongs with some other agency of government. I think the legislature intended that the Department of Ecology should have the responsibility for such decisions. I am satisfied it

---

[12]*Sierra Club v. Froehlke*, 359 F. Supp. 1289, 1385 (S.D. Tex. 1973), is a case in which a judge undertook the task of reviewing, conscientiously and laboriously, thousands of pages of evidence, most of it highly technical, in an attempt to decide whether an adequate environmental impact statement had been prepared by the U.S. Army Corps of Engineers. The project under consideration was the widening and straightening of the Trinity River and construction of a reservoir, for the purposes of navigation, flood control, water conservation and recreation. The court ordered that new environmental impact statements be prepared and that one such statement be followed by its "complete review and acceptance by the Congress, the relevant federal agencies and the Council on Environmental Quality."

The opinion does not cite any statutory or other authority for this novel review procedure, which not only imposed a duty upon Congress

did not intend to rest it in the courts. Had it expressly done so, I would expect the court to view it as an unconstitutional attempt to impose upon the court a nonjudicial function. *See In re Elliott*, 74 Wn.2d 600, 446 P.2d 347 (1968). Also, if this court is going to assume the task of reviewing agency consideration of environmental factors, it seems to me that it should look to the substance rather than attach controlling significance to the form. The question should be —not, Did the agency have before it an "adequate environmental impact statement"?—but rather, Did the agency have before it sufficient evidence of the impact on the environment to render an informed judgment? In reviewing such an action, we should require a showing that evidence was obtainable, in the exercise of reasonable diligence, which would have had some probable effect on the decision. We should not expect superhuman performances from other agencies of government just because we ourselves are unfettered by human limitations.[13]

If the majority thinks that the limiting of access has an important effect on the environment, it should advise the respondents what it considers this impact to be, so that they will know how to recognize relevant data when they see it. Of course, this might be said to be embarking upon

---

but gave a reviewing power to a private organization. The court also ordered that the new statement be couched in common nontechnical language, an order which appears to have been designed to aid the court in case it might fall its lot to perform the onerous task of review again. However, the court was at some pains to guard against such an eventuality, by delegating that function to others, including the Congress and one of the plaintiffs. It seems to me that this order of the court demonstrates how inappropriate it is to expect a judicial officer to evaluate a matter which can be understood only by experts in other fields. Few of us is learned in any discipline other than the law; and even there, our scholarship and perception are not always impeccable.

[13]The record in this case shows that the Highway Commission held many meetings and hearings before compiling its environmental impact statement and that it solicited the advice and opinion of every interested party, insofar as it was able to ascertain who such parties were. The appellants do not dispute this, nor do they show that the respondents failed to give honest consideration to all the evidence before them. There is not even a claim that they failed to consider the

judicial legislation, but since that is precisely what the majority has undertaken to do in this action, it should at least make the legislation coherent.

Further, the court should offer some guidance to trial courts. It should set forth the circumstances under which persons, whose injuries are consequential and no different from those suffered by the public generally, may obtain review of administrative actions. Is this judicial remedy to be available only in environmental cases, or are there perhaps some other favored areas of the law? We should not be surprised if lower courts assume henceforth that the rule, as laid down by this court, is that any person has standing to bring any action if he has the funds to pay an attorney.

The action of the court today must surely result in that confusion and frustration that generally follows when we discard fundamental principles which have served the administration of justice well and are consistent with and implementative of the will of the people as expressed in their constitution. There the legislative power is lodged in the legislature, with reservation of the power of initiative and referendum (Const. art. 2, § 1) and the judicial power is vested in the courts (Const. art. 4, § 1). The rules governing judicial review and statutory construction have their roots in these provisions and manifest the court's recognition of its constitutional duties and limitations. If we abandon one of them, it should be only because experience has shown that it does not serve its purpose. No such showing has been attempted in this case.

In an opinion written by the author of the majority opinion in this case, this court has recently stated, "We are not a super legislature." *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974). In view of the action taken by the court herein, I am afraid a modification has been effected. The statement

---

environmental impact—or that a decision not to limit access or to limit access in some other way would have produced a more favorable impact upon the environment.

must now read, "We are a super legislature only when we choose to be."

I would affirm the judgment in accordance with the views expressed herein.

HALE, C.J., and HUNTER and WRIGHT, JJ., concur with ROSELLINI, J.

Petition for rehearing denied December 10, 1974.